UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DYNISHA HOLMES, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) DIZA TACOS STREETERVILLE, LLC ) ) Defendant. ) | No. 22 C 3378 Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Dynisha Holmes filed suit against Defendant Diza Tacos Streeterville, LLC ("Diza Tacos"), alleging violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.*, and the Chicago Minimum Wage and Paid Sick Leave Ordinance ("Chicago Wage Ordinance"), Municipal Code of Chicago § 1-24-010 *et seq.*, as well as the payment provisions of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* Diza Tacos has moved to compel arbitration and stay the case pending arbitration. Because the parties entered into an arbitration agreement that leaves unconscionability challenges to the arbitrator, the Court compels arbitration and stays this case pending the outcome of the arbitration.

## BACKGROUND

For several months in 2019 and again for one week in 2021, Holmes worked for Diza Tacos, which owns and operates a Taco Bell franchise in Chicago, Illinois. Diza Tacos employed Holmes as an hourly "Crew Member," paying her wages and benefits, as well as controlling her work schedule and duties. Holmes alleges that she and other Crew Members

regularly or occasionally worked over forty hours per week without overtime pay in violation of the FLSA, IMWL, IWPCA, and Chicago Wage Ordinance.

In connection with her employment, Holmes signed a Mandatory Arbitration Agreement and Class Action Waiver (the "Arbitration Agreement") on October 1, 2019. The Arbitration Agreement provides:

> The undersigned agrees that any and all disputes that may arise as a result of my employment with Diza Hospitality and all of its affiliate company [sic] doing business as Auntie Annes, Burger King, Taco Bell, KFC and Subway, and any individual considered to be or who meets the definition of an "employer" under federal and or state statutory or common law, will be submitted to final, binding and mandatory arbitration before the American Arbitration Association (AAA) under the AAA commercial arbitration rules at the offices of AAA, in Chicago, Illinois. The arbitrator alone is allowed to decide whether this agreement is conscionable under state law. The loser of the arbitration will be required to pay the prevailing party's reasonable attorney's fees [and] costs resulting from the arbitration. . . . The undersigned understands this agreement and waiver and if English is not the undersigned's language this agreement has been explained in the appropriate language and it has been understood.

Doc. 16-1 at 5.

## LEGAL STANDARD

Section 3 of the Federal Arbitration Act ("FAA") requires courts to stay a proceeding and to compel arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344. A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Agreements mandating arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract defenses, such as fraud, duress, and

unconscionability, apply to agreements to arbitrate. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The party seeking to avoid arbitration bears the burden of establishing why the arbitration agreement should not be enforced. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

## ANALYSIS

Diza Tacos argues that the Arbitration Agreement requires the Court to compel arbitration. While Holmes does not dispute that she entered into an Arbitration Agreement that covers her claims or that she refuses to arbitrate, she nonetheless maintains that the Arbitration Agreement is unconscionable and thus unenforceable. Diza Tacos responds, however, that because the Arbitration Agreement includes a delegation clause, an arbitrator, and not the Court, must resolve Holmes' enforceability challenge.

The Court typically determines the enforceability of an arbitration provision, but "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69; *see also New Prime Inc. v. Oliveira*, --- U.S. ----, 139 S. Ct. 532, 538 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration."). "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, --- U.S. ----, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the Arbitration Agreement clearly and unmistakably indicates an agreement to arbitrate the question of the Agreement's enforceability. The agreement specifically states that "[t]he arbitrator alone is allowed to decide whether this agreement is conscionable under state

3

law." Doc. 16-1 at 5. This language means that the arbitrator, and not the Court, must determine any questions concerning enforceability unless the delegation clause itself is unenforceable.[1] *See Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891–92 (N.D. Ill. 2016) (collecting cases).

But instead of challenging the enforceability of the delegation clause, Holmes mounts a broader challenge to the Arbitration Agreement as a whole, claiming it is both procedurally and substantively unconscionable. Holmes' only mention of the delegation clause in her response to the motion to compel comes in a footnote addressing the applicable legal standard, in which she states that "[a] delegation clause such as this is enforceable unless, as here, a party challenges the enforceability or validity of the arbitration provision itself." Doc. 20 at 2 (citing *Rent-A-Center*, 561 U.S. at 69–70). This misstates *Rent-A-Center*'s holding, which requires a specific challenge to the delegation clause's enforceability, not to the arbitration agreement as a whole. *See Rent-A-Center*, 561 U.S. at 72 ("[U]nless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *Ali v. Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876, at *4 n.8 (N.D. Ill. Nov. 27, 2017) ("Challenging the validity of an arbitration agreement is not the same as challenging the validity of a delegation clause in that arbitration agreement."). And because Holmes does not specifically challenge the delegation

---

[1] In addition, the majority of courts to consider the issue have concluded that the incorporation of the AAA's rules into an arbitration agreement demonstrates a clear and unmistakable intent to delegate arbitrability questions. *See Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458–59 (N.D. Ill. Aug. 10, 2021) (collecting cases). *But see Taylor v. Samsung Elecs. Am., Inc.*, No. 19 C 4526, 2020 WL 1248655, at *4–5 (N.D. Ill. Mar. 16, 2020) ("It is hard to see how an agreement's bare incorporation by reference of a completely separate set of rules that includes a statement that an arbitrator has authority to decide validity and arbitrability amounts to 'clear and unmistakable' evidence that the contracting parties agreed to delegate those issues to the arbitrator and preclude a court from answering them. . . . The language of the [AAA] rule does not suggest a delegation of authority; at most it indicates that the arbitrator possesses authority, which is not the same as an agreement by the parties to give him sole authority to decide those issues."). The Court does not pass on this question here, given the Arbitration Agreement's clear delegation of questions concerning unconscionability, the only challenge Holmes raises, to the arbitrator.

clause, the Court must treat it as valid and enforce it pursuant to § 2 of the FAA, leaving Holmes' unconscionability arguments for the arbitrator. *See Rent-A-Center*, 561 U.S. at 72; *Nanberg v. 21st Century Flooring, LLC*, No. 21 C 6623, 2022 WL 4482761, at *4–5 (N.D. Ill. Sept. 27, 2022) (plaintiffs' arguments about the arbitration agreement's alleged unconscionability did not amount to specific challenges to the delegation provision, meaning the Court could not pass on them). Therefore, the Court grants Diza Tacos' motion to compel arbitration and stays the proceedings in this case pending the outcome of the arbitration.

## CONCLUSION

For the foregoing reasons, the Court grants Diza Tacos' motion to compel arbitration and stay proceedings [16]. The Court orders the parties to initiate arbitration within twenty-one days and stays this matter pending the resolution of the arbitration proceeding.

Dated: February 6, 2023

_____
SARA L. ELLIS
United States District Judge